UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

v.

CASE NO. 3:20-cv-*1395-J-34MCR*

$16,595.00 IN UNITED STATES
CURRENCY,

    Defendant.

_____

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff, United States of America brings this complaint and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.    This is a civil action in rem to forfeit to the United States $16,595.00 in United States currency (Defendant Currency).

## THE DEFENDANT IN REM

2.    The Drug Enforcement Administration (DEA) seized the Defendant Currency on May 27, 2020 in Jacksonville, Florida, in the Middle District of Florida, and deposited it into the United States Marshals Service Seized Asset Deposit Fund on July 16, 2020.

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States, and pursuant to 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

4.     This Court has in rem jurisdiction over the Defendant Currency because pertinent acts giving rise to the forfeiture occurred in the Middle District of Florida.  28 U.S.C. § 1355(b)(1)(A).

5.     Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395(a), because the Defendant Currency was seized within the Middle District of Florida, Jacksonville Division.

6.     Because the Defendant Currency is in the government's possession, custody, and control, the United States requests that this Court issue an arrest warrant in rem, upon the filing of the complaint, pursuant to Supplement Rule G(3)(b)(1).  Rule G(3)(b)(1) requires the Clerk to issue a warrant of arrest in rem for defendant property if such property is in the government's possession, custody, or control.

7.     After the Court issues the warrant of arrest in rem, the United States will execute the warrant pursuant to 28 U.S.C. § 1355(d) and

Supplemental Rule G(3)(c).

## STATUTORY BASIS FOR FORFEITURE

8.      The Defendant Currency is subject to forfeiture to the United States,
pursuant to 21 U.S.C. § 881(a)(6), as proceeds traceable to the exchange of a
controlled substance and/or was intended to be exchanged for a controlled substance,
or was used to intended to be used to facilitate the distribution of a controlled
substance, in violation of 21 U.S.C. §§ 841.

## FACTS

9.      Specific details of the facts supporting the forfeiture of the Defendant
Currency have been provided by Drug Enforcement Administration  (DEA) Task
Force Officer Darrell Hickox (TFO Hickox), who obtained the information through
investigation, reviewing documents, and communicating with witnesses and other
law enforcement officers. The facts set forth below are not all the facts gathered by
law enforcement during the investigation. Rather, as required by Rule G(2)(f), this
complaint only contains sufficient facts to support a reasonable belief that the
government will be able to show by a preponderance of the evidence that the
Defendant Currency is subject to forfeiture, pursuant to 21 U.S.C. § 881(a)(6).

10.     TFO Hickox has been a law enforcement officer with the Nassau
County Sheriff's Office (NCSO) for approximately sixteen years.  He has been
cross-sworn as a Federal Task Force Officer (TFO) with the DEA, in the

3

Jacksonville District Office, for approximately the past six years. He has received specialized and continuing training in drug law enforcement, including but not limited to Title 21 of the United States Code.

11.    He has been the lead case agent in state and federal drug investigations and has assisted in hundreds of other investigations.  He has been the Affiant on numerous state and federal search warrants resulting in the seizure of controlled substances as well as the seizure of weapons, large sums of currency, electronic devices, ledgers and other forms of documentary and physical evidence.  Based on his training and experience, he is familiar with the current techniques in which narcotics traffickers import, store, manufacture, distribute and finance drug operations.  He is also knowledgeable about the currency and other proceeds derived from large-scale narcotics trafficking.

**First Traffic Stop – May 5, 2020**

12.    On May 5, 2020, Florida Highway Patrol (FHP), Trooper Dunnington, stopped a white two-door Ford Mustang for the driver's failure to wear a seat belt. Pierce, the driver and sole occupant, provided a Florida Identification card to Trooper Dunnington, stating he did not have a license. Trooper Dunnington determined that Pierce's license was suspended and that Pierce was aware of the suspension.

13.     Trooper Dunnington conducted a records check and discovered Pierce's driver's license had been suspended numerous times. Additionally, Pierce had a history of narcotics possession charges along with other criminal charges. FHP K-9 State Trooper Karpinski arrived on scene as routine back up. Trooper Dunnington, who had noticed a large bulge in Pierce's right pants pocket, conducted a probable cause search of Pierce and his vehicle.  During the search, he found a large sum of United States Currency (cash) on Pierce's person and inside the vehicle.

14.     At FHP's request, DEA TFO's Hickox and Earrey came to the scene. Trooper Dunnington explained details related to the traffic stop. Trooper Dunnington advised he was surprised an individual would carry so much cash on his person and have it bulging the way Pierce had it positioned in his pockets. Trooper Dunnington stated the cash was positioned in such a way in Pierce's pocket that it appeared as if it could be a firearm. Trooper Dunnington stated that only once Pierce slowly pulled the "stacks" of the cash out his pocket, did he realize there was no weapon of any sort.

15.     TFOs Hickox and Earrey spoke with Pierce and seized the cash. Pierce claimed the money belonged to him but he did not provide the source of the money. He stated the amount was approximately $16,000.00.  Troopers

Karpinski and Dunnington conducted a preliminary unofficial roadside count of the cash, concluding it was approximately $16,090.00.

16.     Pierce's girlfriend, Kyya Alexandra Jones, then arrived. TFO Earrey asked Ms. Jones if she was aware of, or knew a reason for, Pierce possessing and driving around with a large amount of cash, Ms. Jones advised approximately $4,000.00 or $5,000.00 was her money that she earned via selling women's cosmetics. She did not know where the remaining $11,000.00 or $12,000.00 came from or why Pierce would be randomly riding around with that much money.  She added that Pierce was not working but living off of her.

17.     TFO Hickox told Pierce he would have to present some documentation of his ownership of the money, like a bank statement or pay check stub.  The next day, May 6, 2020, at the DEA offices in Jacksonville, Pierce presented a computer printout from a family law case involving payment of child support by his father to his mother. The document appeared to show that Pierce's mother had received a $20,837.40 payment on January 8, 2018, two years prior to the stop. Pierce claimed the child support payment was the source of the seized cash. Although he had questions about this story, TFO Hickox gave Pierce the benefit of the doubt and returned the money to him.

**May 27, 2020 Traffic Stop**

18.     Approximately three weeks later, on May 27, 2020, FHP
Criminal Interdiction Unit (CIU) State Troopers stopped a black 2020 Range
Rover Evoque Sport Utility Vehicle with dark, tinted windows, at the corner
of Mill Creek Road and Atlantic Boulevard in Jacksonville.  FHP K-9 Trooper
Karpinski suspected that the window tint violated Florida Statute 316.2953.

19.     The marked FHP Patrol cars pulled behind the Range Rover, and
the FHP Troopers noted that the vehicle rapidly made an unnecessary lane
change to the first exit ramp, in a maneuver that appeared to be an attempt to
avoid the police.

20.     Marquis Jerome Jackson drove the Range Rover, which was
registered to Hertz Vehicles, LLC, and Pierce sat in the front passenger seat.
Trooper Karpinski discussed the reason for the stop with the car's occupants
and checked the front windows with a certified window tint meter, which
measured a reading of 12%, a measurement in violation of Florida law. When
Trooper Karpinski asked Jackson if he installed the window tint on the rental
vehicle, Jackson replied that he had taken the vehicle to a location to have the
tint installed. Trooper Karpinski later advised TFO Hickox that based on his
training and experience, tinted rental cars are commonly used for criminal
activity and for concealing the identity of subjects within and that rental

vehicles are equipped with only factory tint from the manufacturer. The photo

below shows the vehicle and the tint measurement at the scene:



21.    Trooper Karpinski noted that both Pierce and Jackson became

overly nervous when speaking with him, and that they both gave inconsistent

stories of their travel that day.  They both became argumentative when

Trooper Karpinski asked questions that were more detailed about their travel.

22.    FHP K-9 Trooper Achors arrived on scene to assist while

Trooper Karpinski continued checking Jackson and Pierce's driver license

status and information via NCIC/FCIC to search for any valid warrants.

Trooper Achors deployed his certified FHP K-9 Ace to conduct a free air sniff.

K-9 Ace alerted to the vehicle for the presence of narcotics.  Both Pierce and

Jackson became argumentative and stated the car could not be searched

without a warrant. Trooper Achors began a probable cause search of the interior and exterior of the vehicle.

23.     Trooper Karpinski asked both Jackson and Pierce to step to the front of his police vehicle, so he could search them. Trooper Karpinski located approximately $400.00 in loose cash and a flip cellular phone on Jackson's person. Trooper Karpinski then searched Pierce, whom he recognized from the stop on May 5, 2020. Trooper Karpinski observed two large bulges in Pierce's front pant pockets and located a large sum of cash inside Pierce's pocket. Trooper Karpinski noted that the amount of cash found on Pierce and the way it was carried is extremely uncommon when compared to habits of the average person. It was in assorted denominations, which is consistent with and commonly found with sales of illicit narcotics. Bank withdrawals from either an A.T.M. or from inside a bank typically disperse customers with mostly $20.00 bills. Trooper Karpinski believed Pierce was involved in the sales of illicit narcotics based on the manner the cash was folded, assorted and loosely held within Pierce's pant pocket.

24.     Trooper Karpinski asked Pierce why he had so much cash with him. Pierce stated, "It's my money man, I can't carry it like that?" Trooper Karpinski replied that Pierce he could carry the money anyway he wished, but that it is uncommon for an average person to loosely carry so much money.

Trooper Karpinski asked Pierce the estimated amount of the cash. Pierce told him it was $20,000.00.

25.     The FHP Troopers then contacted the DEA for assistance.  DEA Task Force Officers and Special Agents arrived and obtained background information from the FHP Trooper.

26.     Troopers Achors and Tber continued the probable cause search of the vehicle. TFO Hickox and TFO Earrey helped them. Trooper Achors advised TFO Hickox he located a razor blade in the center console area, near the cup holders. The razor blade had a white powdery substance on the bladed portion. TFO Hickox and Trooper Karpinski know, as drug investigators, that razor blades are commonly used to break down cocaine into fine powder and to create single usage of "Lines." Razor blades are also commonly used to cut shards of cocaine off wholesale quantities of cocaine. The powdery substance was later tested, utilizing a cocaine swap test kit, which showed the substance to presumptively test positive for cocaine. Also located inside the center console of the Range Rover was another approximately $1,600.00 in assorted denominations.

27.     TFO Hickox learned that Trooper Achors, during his search of the vehicle, also located an open flip cellular phone in plain view on the passenger seat. Trooper Achors did not physically search the phone, but a

visible message was on the screen, which stated, in substance, do you have

any boy? TFO Hickox knows that the term "boy" is often referred to as a slang

or street name by drug traffickers/dealers as heroin. Troopers Karpinski and

Achors also informed TFO Hickox that Jackson was in possession of a flip

cellular phone on his person. The flip cellular phones were seized and TFO

Hickox prepared search warrants for both devices.

     28.     TFO Hickox and TFO Earrey seized the cash taken from Pierce's

pocket. Pierce claimed ownership of the money and signed the DEA evidence

bag. Pierce submitted a claim in the subsequent administrative forfeiture

proceeding that the money came from a back child support award made to

Pierce's mother.  The photograph below shows the cash from Pierce's pants

pocket after seizure:

 

29.    The officers returned the cash from inside the vehicle (center console) to Jackson along with the approximately $400 found on him.

**Additional Investigation**

30.    TFO Hickox later conducted some investigation regarding the child support claim.  On December 7, 2020, TFO Hickox and DEA SA Checo spoke to an individual in the Duval County Court Clerk's office regarding the family law case involving Pierce, who is now approximately 31 years old. The case started in July 2004.  Over the period of 14 years Cary Pierce, father of Carrell Pierce made payments to Carrell Pierce's mother, Emma Bythwood. The most paid at any given time was the final payment made on January 23, 2018 for $20,000.

31.    On June 2, 2020, TFO Hickox obtained a State of Florida Search Warrant for both cellular flip phones. The execution of the search warrant on the phone belonging to Pierce revealed SMS text messages and are transcribed below. The price amounts that are discussed in the SMS text messages indicate a negotiation for the sale of Heroin.

Message 1: "It is 60 now please."

Message 2: "Sorry 100 Sould I Walk To You?"

Message 3: "Read My Tex."

Message 4: "U Have Any Boy."

Message 5: "Do You Sell Boy."

32.     The execution of the search warrant on the phone belonging to

Jackson revealed one SMS text message, which is transcribed below.

Message 1: "At I Need That Boy If U Can Get It. Call Me When U Can. Its

Captains Girl Leighanne."

33.     On June 2, 2020, United States Border Patrol (CBP), Federal

Officer J. Reid, who is assigned to the DEA Task Force, used his CBP K-9

Aragon to conduct a parcel and baggage line-up sniff on the USC seized from

Pierce. K-9 Aragon showed a positive/physical alert on the bag containing the

USC but did not alert on the other boxes. The K-9 alert provides further

evidence that the seized USC was associated with some type of illegal

narcotics.

34.     TFO Hickox is aware that a half-kilogram of cocaine costs about

$16,000.00 and 9 ounces of Heroin would cost about $16,000.00. The phones

support drug talk of "Boy", which is a new, known term for Heroin. The

amount of money seized is consistent with the amount he has collected to

purchase additional narcotics since we found only drug paraphernalia, residue

and no other drugs. During both encounter's Pierce was in possession of an

estimated amount of $16,000.00

35.    TFO Hickox conducted a criminal history check on Pierce, and determined that Pierce's criminal history includes an arrest for Possession of Cocaine (2011 – Guilty/Convicted, Felony 3rd Degree).

36.    Based upon the totality of the facts, there is probable cause to believe that the Defendant Funds were (1) money furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substance Act; (2) proceeds traceable to such an exchange; or (3) facilitated or intended to facilitate a violation of the Controlled Substance Act.

37.    These facts include the drug paraphernalia, traces of drugs, positive dog alerts associated with the May 27th seizure, the large sum, and denominations, of the currency carried by Pierce in his pants pocket, the illegal tint placed on a rental car, the negotiation of illegal narcotics transactions in the text messages, and Pierce's criminal history involving drug charges. These facts are bolstered by the unlikely story that Pierce had been transporting, through both traffic stops, a very significant sum of money in his pants pockets allegedly from a back child support payment, made two years prior–on January 23, 2018.

**CONCLUSION**

WHEREFORE, pursuant to Supplemental Rule G, Plaintiff, United States of America, requests that this Court initiate a process of forfeiture against the Defendant

Currency, and duly notice all interested parties to appear and show cause why the

forfeiture should not be decreed.

The United States further requests that the Court order the Defendant

Currency forfeited to the United States for disposition according to law, and that the

United States have such other relief as this case may require.

Dated: December _\/\__, 2020          Respectfully submitted,

                                      MARIA CHAPA LOPEZ
                                      United States Attorney


                             By:      _Bonnie A. Glober_
                                      BONNIE A. GLOBER
                                      Florida Bar No. 0748307
                                      Assistant United States Attorney
                                      300 N. Hogan Street, Suite 700
                                      Jacksonville, Florida 32202
                                      Telephone: (904) 301-6300
                                      Facsimile: (904) 301-6310
                                      E-mail: bonnie.glober@usdoj.gov

<u>**VERIFICATION**</u>

Pursuant to 28 U.S.C. § 1746, I, Darrell Hickox, declare under the penalty of perjury, that I am a Federal Task Force Officer with the Drug Enforcement Administration. I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my knowledge and belief.

I have acquired my knowledge in this matter through my personal experience, observation, and investigation, and through information conveyed to me by other law enforcement officers, as well as information contained in the official files and records of the United States.

Executed this _11th_ day of _December_ 2020.

T.F.O. D Hickox
DARRELL HICKOX
Task Force Officer
Drug Enforcement Administration

15

&JS 44   (Rev. 12/07)

# CIVIL COVER SHEET   3:20-cv-1395-J34MCR

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

$16,595.00 IN UNITD STATES CURRENCY

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bonnie A. Glober, U.S. Attorney's Office, 300 N. Hogan Street, Suite 700, Jacksonville, FL 32202  (904) 301-6300

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☒ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☒ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | |
|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) |

☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. 881(a)(6)
Brief description of cause:
civil forfeiture in rem

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   12/11/20

SIGNATURE OF ATTORNEY OF RECORD   Bonnie A. Glober

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE  34   MAG. JUDGE  MCR